HEALING ARTS PRACTITIONER
Those individuals who are licensed by the State of Oklahoma as practitioners of the healing art, including Chiropractors, Dentists and Optometrists, are within the meaning of the provision "regardless of the branch of the healing arts" as used in Section 5 of House Bill 1210, First Session, Thirty-Third Legislature. We have considered your request for an opinion with respect to the phrase "regardless of the branch of the healing arts" as used in House Bill 1210, which was enacted by the 1971 Legislature, relating to accident and health insurance. Your specific question is as follows: "Would this language include Chiropractors, Dentists, Optometrists, etc.? Who is duly licensed under the laws of this State to perform such services or procedures to ill or injured persons, 'regardless of the branch of healing arts to which he may belong Section 5 of House Bill 1210 provides: "Services or procedures covered by the terms of any individual, group, blanket, or franchise policy, nonprofit contract or agreement, whatsoever, providing accident or health benefits hereafter renewed or issued for delivery in Oklahoma by any issuer, whether a stock or mutual insurance company, a medical service corporation or association or nonprofit group, or any other type of issuer whatever, and covering an Oklahoma risk, may be performed by any practitioner licensed under the healing arts selected by the insured, or by his parent or guardian, if he is a minor, who is duly licensed under the laws of this state to perform such services or procedures, and said practitioner shall be equally compensated for such services on the basis of charges prevailing in the same community for similar services or procedures to like ill or injured persons regardless of the branch of the healing arts to which he may belong, provided such profession does not permit false and fraudulent advertising." (Emphasis added) Title 59 O.S. 702 [59-702] (1961), provides: "For the purposes of this Act, the term healing art includes any system, treatment, operation, diagnosis, prescription or practice for the ascertainment, cure, relief, palliation, adjustment or correction of any human disease, ailment, deformity, injury or unhealthy or abnormal physical or mental pain." Title 59 O.S. 701 [59-701] (1961), provides in part: "No person shall be permitted to take an examination for a license to practice the healing art or any branch thereof, or be granted any such license, unless he has presented to the board or officer empowered to issue such a license as the applicant seeks, a certificate of ability in anatomy, physiology, chemistry, bacteriology, and pathology (hereinafter referred to as the basic sciences), maintenance; provided, no hospital or equipment therein shall be leased other than to a public trust of which the county is beneficiary unless the specific leasing be authorized by the voters of the county at a general election, or a special election called for such purpose, and approved by a majority vote of the electors voting on such proposition at any such election." It appears from the plain reading of the statute that if the Board of Control is to enter into a lease agreement it must be the leasing of a county hospital to a charitable non-profit organization or to a public trust of which the county is beneficiary unless the specific leasing be authorized by a county-wide vote. In any event the plain intent of the statute appears to restrict said leasing agreement to the county hospital proper and to the specified institutions. The above cited authorities as hereinbefore noted restrict the construction of the statutory authority to the plain meaning contained therein. It is therefore the opinion of the Attorney General that your second question be answered in the negative and that a Board of Control of a county hospital cannot use surplus funds to build a private building to be operated as a private doctor's clinic and/or enter into any lease agreement concerning that building to a private institution or individual. (Robert H. Mitchell) T ** SEE: OPINION NO. 71-440 (1972) **